UNITED STATES DISTRICT COURT
FOR THE MIDDLE DISTRICT OF PENNSYLVANIA

JOHN AUDI and ALICE AUDI,     :
                              :CIVIL ACTION NO. 3:12-CV-836
          Plaintiffs,         :
                              :(JUDGE CONABOY)
          v.                  :
                              :
THOMAS JENKINS,               :
                              :
          Defendant.          :
                              :

_____

**MEMORANDUM**

     Here we consider the Motion to Dismiss of Defendant, Police Officer Thomas Jenkins. (Doc. 7.)  Defendant Jenkins ("Defendant") filed his motion on June 8, 2012, accompanied by a supporting brief (Doc. 8).  Plaintiffs John and Alice Audi ("Plaintiffs") filed their opposition brief on June 25, 2012.  (Doc. 13.)  Defendant did not file a reply brief, and the time for doing so has passed. Therefore, this motion is ripe for disposition.  For the reasons discussed below, we conclude Defendant's motion is properly granted in part and denied in part.

## 1. Background

     The incident giving rise to this action occurred on July 21, 2011, when Plaintiffs traveled to their home in Moosic, Pennsylvania, from their son's home in Yatesville, Pennsylvania. (Doc. 1 ¶ 10.)  Mr. Audi was driving and Ms. Audi was a passenger. (Doc. 1 ¶¶ 10-11.)  At the time Mr. Audi was eighty-six years old and Ms. Audi was eighty-four years old.  (Doc. 1 ¶¶ 13-14.)  Ms. Audi is (and was at the relevant time) legally blind due to macular

degeneration and also suffers from arthritis, coronary artery disease, and impaired mobility.  (Doc. 1 ¶¶ 15-16.)  Mr. Audi has a hearing impairment.  (Doc. 1 ¶ 16.)

At about 6:30 p.m. on July 21, 2011, Plaintiffs entered Wylam Avenue en route to their house.  (Doc. 1 ¶ 17.)  As he entered the last block before his house, Mr. Audi noticed a police vehicle following him with its lights on.  (Doc. 1 ¶ 18.)  He pulled over to the curb in front of his house, and the police vehicle operated by Defendant pulled to a stop nearby.  (Doc. 1 ¶¶ 19-21.)  While Ms. Audi remained in the car, Mr. Audi got out and approached the police vehicle where Defendant was seated in the driver's seat with the door and window open.  (Doc. 1 ¶¶ 22-24.)  When asked whether there was a problem, Defendant replied that Mr. Audi had gone through a stop sign.  (Doc. 1 ¶¶ 25-26.)  Mr. Audi responded that he did not think he had gone through the stop sign.  He also told Defendant that his daughter's funeral had been the day before and he was not feeling well.  (Doc. 1 ¶¶ 27-28.)  When Mr. Audi could not hear Defendant's response, he moved closer to the police vehicle and put his head to Defendant's open car window.  (Doc. 1 ¶ 29.)  Defendant then exited his vehicle, pushing Mr. Audi away and "screamed at him" that if he put his head inside the car again, he would be handcuffed.  (Doc. 1 ¶ 30.)  Mr. Audi then gave Defendant his license and went into his house to use the bathroom.  (Doc. 1 ¶ 31.)

Ms. Audi then exited the car to speak with Defendant.  (Doc. 1 ¶ 32.)  Officer Jenkins put his hand on her right arm and pushed her back, reportedly causing Ms. Audi to lose her balance and "nearly" fall.  (Doc. 1 ¶ 33.)

At this time, another Moosic police vehicle arrived and Defendant left the scene.  (Doc. 1 ¶ 34.)  The officers in the second vehicle returned Mr. Audi's license and gave him a moving violation citation.  (Doc. 1 § 35.)

In the following days, Mr. Audi recognized Defendant as he circled Plaintiffs' house in a police vehicle on several occasions, slowing down as he went by.  (Doc. 1 ¶¶ 36-38.)

Based on these asserted facts, Plaintiffs filed a six-count complaint in this Court.  In Counts I and II, Plaintiffs allege that Defendant violated their civil rights, claiming a 42 U.S.C. § 1983 violation grounded in the averment that Defendant's use of unreasonable and excessive force constituted an unreasonable seizure under the Fourth and Fourteenth Amendments to the United States Constitution.  (Doc. 1 at 6-9.)  Counts III and IV contain state law claims for Assault and Battery.  (Doc. 1 at 9-11.) Counts V and VI contain state law claims for Intentional Infliction of Emotional Distress.  (Doc. 1 at 11-13.)

## II.  **Discussion**

Defendant asserts that dismissal of this case is proper because Plaintiffs have failed to state a claim upon which relief

3

may be granted.  (Doc. 8.)  For the reasons discussed below, we agree that some claims are subject to dismissal and others must be allowed to proceed.

**A.   Motion to Dismiss Standard**

In a motion to dismiss for failure to state a claim, the defendant bears the burden of showing that no claim has been presented. *Hedges v. United States*, 404 F.3d 744, 750 (3d Cir. 2005) (citing *Kehr Packages, Inc. v. Fidelcor, Inc.*, 926 F.2d 1406, 1409 (3d Cir. 1991)).  When reviewing a complaint pursuant to a defendant's motion to dismiss for failure to state a claim filed under Federal Rule of Civil Procedure 12(b)(6), the court does so in the context of the requirement of Federal Rule of Civil Procedure 8(a)(2) which requires only "a short and plain statement of the claims showing that the pleader is entitled to relief."  The "short and plain statement" must be sufficient to "give the defendant fair notice of what the plaintiff's claim is and the grounds upon which it rests." *Conley v. Gibson*, 355 U.S. 41, 47 (1957), *abrogated on other grounds by Bell Atlantic Corp. v. Twombly*, 550 U.S. 433 (2007).  *Twombly* confirmed that more is required than "labels and conclusion, and a formulaic recitation of the elements of a cause of action will not do."  550 U.S. at 555 (citing *Papasan v. Allain*, 478 U.S. 265, 286 (1986) (on a motion to dismiss, courts "are not bound to accept as true a legal conclusion couched as a factual allegation")).  "Factual allegations must be

4

enough to raise a right to relief above the speculative level on the assumption that all allegations in the complaint are true (even if doubtful in fact)." 550 U.S. at 555 (citations omitted).

In *McTernan v. City of York*, 577 F.3d 521, 530 (3d Cir. 2009), the Third Circuit Court of Appeals set out the standard applicable to a motion to dismiss in light of the United States Supreme Court's decisions in *Twombly*, 550 U.S. 433 (2007), and *Ashcroft v. Iqbal*, 556 U.S. 662, 129 S. Ct. 1937 (2009).

> "[T]o survive a motion to dismiss, a
> complaint must contain sufficient factual
> matter, accepted as true to 'state a claim
> that relief is plausible on its face.'"
> *Iqbal*, 129 S.Ct. at 1949 (citing *Twombly*, 550
> U.S. at 570). The Court emphasized that
> "only a complaint that states a plausible
> claim for relief survives a motion to
> dismiss." *Id.* at 1950. Moreover, it
> continued, "[d]etermining whether a complaint
> states a plausible claim for relief will . .
> . be a context-specific task that requires
> the reviewing court to draw on its judicial
> experience and common sense." *Id.* (citation
> omitted).

*McTernan,* 577 F.3d at 530. The Circuit Court discussed the effects of *Twombly* and *Iqbal* in detail and provided a road map for district courts presented with a motion to dismiss for failure to state a claim in a case filed just a week before *McTernan*, *Fowler v. UPMC Shadyside*, 578 F.3d 203 (3d Cir. 2009).

> [D]istrict courts should conduct a two-part
> analysis. First, the factual and legal
> elements of a claim should be separated. The
> District Court must accept all of the
> complaint's well-pleaded facts as true, but
> may disregard any legal conclusions. [*Iqbal*,

5

> 129 S. Ct. at 1949.] Second, a District
> Court must then determine whether the facts
> alleged in the complaint are sufficient to
> show that the plaintiff has a "plausible
> claim for relief." *Id.* at 1950. In other
> words, a complaint must do more than allege a
> plaintiff's entitlement to relief. A
> complaint has to "show" such an entitlement
> with its facts. *See Philips* [*v. Co. of
> Alleghany*], 515 F.3d [224,] 234-35 [(3d
> Cir.2008 )]. As the Supreme Court instructed
> in *Iqbal*, "[w]here the well-pleaded facts do
> not permit the court to infer more than the
> mere possibility of misconduct, the complaint
> has alleged--but it has not 'show[n]'--'that
> the pleader is entitled to relief.'" *Iqbal*,
> 129 S. Ct. at 1949. This "plausibility"
> determination will be "a context-specific
> task that requires the reviewing court to
> draw on its judicial experience and common
> sense." *Id.*

*Fowler*, 578 F.3d at 210-11.

The Circuit Court's guidance makes clear that legal conclusions are not entitled to the same deference as well-pled facts. As noted above, "the court is 'not bound to accept as true a legal conclusion couched as a factual allegation.'" *Guirguis v. Movers Specialty Services, Inc.*, No. 09-1104, 2009 WL 3041992, at *2 (3d Cir. Sept. 24, 2009) (quoting *Twombly*, 550 U.S. at 555) (not precedential).

Finally, the district court must extend the plaintiff an opportunity to amend before dismissing a complaint unless amendment would be inequitable or futile. *See Grayson v. Mayview State Hosp.*, 293 F.3d 103, 108 (3d Cir. 2002).

**B.   Grounds for Dismissal**

6

1.   ***Excessive Force/Unreasonable Seizure***

First Defendant claims that Plaintiffs' § 1983 claims brought under the Fourth and Fourteenth Amendments should be analyzed under the Fourth Amendment objective reasonableness standard.   (Doc. 8 at 4-5.)   Plaintiffs do not dispute this.   (Doc. 13 at 5.)   Plaintiffs correctly point out that Defendant does not argue that the allegations in the Complaint are insufficient to state a claim for excessive force.   (Doc. 13 at 4.)   Because it is Defendant's burden to show that no claim has been presented, further discussion of whether Plaintiffs state a claim for excessive force would be improper.

Defendant also asserts that "should it be determined that the alleged use of force amounts to a constitutional violation," Defendant is entitled to qualified immunity.   (Doc. 8 at 10.) Although Defendant sets out the law relevant to qualified immunity, his brief is totally devoid of any application of law to fact. (*See* Doc. 8 at 13-14.)   Therefore the Court is constrained to find that Defendant has not met his burden of showing that he is entitled to qualified immunity.

Because Defendant has not met his burden of showing that Plaintiffs have not presented a claim regarding excessive force/unreasonable seizure or that he is entitled to qualified immunity, both Counts I and II of Plaintiffs' Complaint based on excessive force/unreasonable seizure go forward.

## 2.   *Equal Protection*

Defendant next claims that, to the extent Plaintiffs may be making an equal protection claim, it fails as a matter of law. (Doc. 8 at 5.)  Plaintiffs respond that they "have asserted facts critical to their case involving their protected class membership, i.e., age and disability.  The reasonable inference from the complaint that could be drawn is that Defendants [sic] actions were motivated by Plaintiff's [sic] memberships in their protected classes, which protected class membership was obvious to the Defendant."  (Doc. 13 at 5 (citing Doc. 1 ¶¶ 13-16).)  On this basis, Plaintiffs conclude that their claims under both the Fourth and Fourteenth Amendment should proceed.  (*Id.*)

Although Plaintiffs do not specifically say they are asserting an equal protection claim, we read their response to Defendant's motion to do so.  We conclude Plaintiffs' mere mention of age and physical problems in their Complaint is insufficient to state an equal protection claim based on age and physical disability.

Under the Fourteenth Amendment, no state shall "deny to any person within its jurisdiction the equal protection of the laws." U.S. Const. amend. XIV, § 1.  This is "essentially a direction that all persons similarly situated should be treated alike."  *City of Cleburne, Tex. v. Cleburne Living Center*, 473 U.S. 432, 439 (1985). To state a § 1983 claim based on a violation of the Equal Protection Clause, a plaintiff must allege "the existence of

purposeful discrimination . . . in other words, that [he] received different treatment from that received by other individuals similarly situated." *See Shuman ex rel. Shertzer v. Penn Manor School Dist.*, 422 F.3d 141, 151 (3d Cir. 2005). There are different bases upon which a plaintiff can allege a violation, but he "must allege that he has been treated differently because of his membership in a [protected] class or his exercise of a fundamental right, or that he has been treated differently from similarly-situated others and that this differential treatment was not rationally related to a legitimate state interest." *Young v. New Sewickley Twp.*, 160 Fed. Appx. 263, 266 (3d Cir. 2005) (not precedential) (*citing City of Cleburne v. Cleburne Living Ctr.*, 473 U.S. 432 (1985)); see also *Phillips v. County of Allegheny*, 515 F.3d 224, 243 (3d Cir. 2008). At the pleading stage, allegations of irrational and wholly arbitrary treatment may be sufficient to state a claim even without allegations of improper subjective motive. *See Village of Willowbrook v. Olech*, 528 U.S. 562 (2000).

To state an equal protection claim on the basis of either age or disability (neither of which are suspect classifications), a plaintiff must allege that he was treated differently from non-disabled or younger individuals and that there was no rational basis for the difference in treatment. *Gregory v. Ashcroft*, 501 U.S. 452, 470 (1991) (age is not suspect classification under Equal Protection Clause); *City of Cleburne v. Cleburne Living Center*, 473

U.S. 432, 446 (1985) (disability is not suspect classification

under Equal Protection Clause).

     In Counts I and II, Plaintiffs' 42 U.S.C. § 1983 claims, they

allege that

          Officer Jenkins' conduct against [Plaintiffs]
          including his use of unreasonable and
          excessive force, constituted an unreasonable
          seizure under the Fourth and Fourteenth
          Amendments to the United States Constitution.
          . . . Officer Jenkins' conduct therefore was
          a deprivation, under color of state law, of
          rights guaranteed to [Plaintiffs] under the
          Fourth and Fourteenth Amendments to the
          United States Constitution. . . . As a result
          of Officer Jenkins' violation of
          [Plaintiffs'] constitutional rights,
          [Plaintiffs] suffered substantial injuries
          and damage.

(Doc. 1 ¶¶ 46-48, 50-52.)  The portions of the Complaint cited by

Plaintiffs as supportive of claims based on protected class

membership state that

          Mr. Audi was eighty-six years of age in July
          2011. . . . Ms. Audi was eighty-four years of
          age in July 2011. . . . Ms. Audi is legally
          blind due to macular degeneration and was
          legally blind in July 2011. . . . Ms. Audi
          also has arthritis and coronary artery
          disease and her mobility is impaired. . . .
          Mr. Audi has a hearing impairment.

(Doc. 1 ¶¶ 13-16.)

     Given the relevant caselaw set out above, it is clear that

Plaintiffs' Complaint is devoid of any factual allegations that

would raise an asserted right to relief under the Equal Protection

Clause "above the speculative level."  *Twombly*, 550 U.S. at 555.

10

Therefore, to the extent Plaintiffs assert that they raise such a claim, it is dismissed.  While we find it highly unlikely that Plaintiffs will be able to supplement their pleading with facts sufficient to overcome the deficiencies of this claim, we cannot say it would be futile, and, therefore grant Plaintiffs leave to file an amended complaint.

## 3.   *Assault and Battery*

Defendant next argues Plaintiffs' claims for assault and battery should be dismissed, citing Pennsylvania's statute governing a police officer's use of force in making an arrest, 18 Pa. C.S. § 508.  (Doc. 8 at 5.)  We conclude Defendant has failed to meet his burden of showing Plaintiffs do not present assault and battery claims.

Section 508 states in part that a police officer "is justified in the use of any force he believes to be necessary to effect the arrest and of any force he believes to be necessary to defend himself or another from bodily harm while making the arrest."  18 Pa. C.S. § 508(a)(1).  The Supreme Court of Pennsylvania discussed the use of force by a police officer in the exercise of his duties as it relates to assault and battery in *Renk v. City of Pittsburgh*, 641 A.2d 289 (Pa. 1994).

> "Assault is an intentional attempt by force to do an injury to the person of another, and a battery is committed whenever the violence menaced in an assault is actually done, though in ever so small a degree, upon the person."  *Cohen v. Lit*

11

>*Brothers*, 166 Pa. Super. 206, 209, 70 A.2d
>419, 421 (1950).  (Citation omitted.)  A
>police officer may use reasonable force to
>prevent interference with the exercise of his
>authority or the performance of his duty.  In
>making a lawful arrest, a police officer may
>use such force as is necessary under the
>circumstances to effectuate the arrest.  The
>reasonableness of the force used in making
>the arrest determines whether the police
>officer's conduct constitutes an assault and
>battery.

641 A.2d at 293.

Defendant asserts that "[t]he inquiry turns on whether the conduct alleged is willful misconduct." (Doc. 8 at 7.)  Plaintiffs do not disagree with Defendant's statement of the law. (Doc. 13 at 6-8.)  However, they maintain that "[u]nder the facts as stated, the Defendant had no justification for his actions against the Plaintiffs which clearly amount to willful misconduct, which would also negate any claim for immunity." (Doc. 13 at 7.)  Plaintiffs conclude that

>the facts allege a blatant and completely
>unnecessary use of force by the Defendant
>against the Plaintiffs with absolutely no
>justification for the Defendant's actions.
>It can reasonably be inferred that Defendant
>was aware that his actions would constitute
>assault and battery, would be excessive under
>the circumstances, would intentionally
>inflict emotional distress, and were not
>justified by statute.

(Doc. 13 at 8.)  On this basis, Plaintiffs contend their assault and battery claims should proceed.  (*Id.*)

We conclude Defendant's assertion that "Plaintiffs must

12

establish 'willful misconduct' on the part of defendant," (Doc. 8 at 7) is not an accurate statement of the relative burdens on a motion to dismiss.  Rather than it being Plaintiffs' burden to establish an element of their claim, it is Defendant's burden to establish that they have not, or cannot, show an essential element of their claim.  *See Hedges*, 404 F.3d at 750.  As in other instances discussed above, Defendant has failed to apply law to facts and meet his burden of showing Plaintiff has failed to state a claim upon which relief may be granted.  After quoting § 508, Defendant states that "[t]he actions of Officer Jenkins therefore comport with state law as well, as he used minimal force in stopping the plaintiffs, and citing Mr. Audi for a traffic violation, for which he was culpable."  (Doc. 8 at 6.)  With this assertion, Defendant does not argue that he did not use force nor does he state why *any* force was needed.  Because the Pennsylvania statute states that an officer "is justified in the use of force which he believes to be necessary to defend himself or another from bodily harm while making the arrest," 18 Pa. C.S. § 508 (a)(1), Defendant must do more than state that his actions comported with state law.  Defendant's further conclusory statements that Plaintiffs "rely solely on the self-serving accusations of the Complaint" (Doc. 8 at 7) and "Plaintiffs have failed to meet their burden" (Doc. 8 at 7-8) are similarly deficient.

For the reasons discussed above, we conclude Defendant has not

13

met his burden of showing that Plaintiffs have failed to state claims for assault and battery.  Therefore, his motion to dismiss these claims is denied.

**4.   *Intentional Infliction of Emotional Distress***

Defendant maintains that Plaintiffs' claims for intentional infliction of emotional distress ("IIED") must fail because Plaintiffs do not allege any physical harm as a result of emotional distress.  (Doc. 8 at 10.)  We agree.

Although the tort of intentional infliction of emotional distress is not officially recognized by the Pennsylvania Supreme Court, the Court noted that the terms of recovery set out in the Restatement (Second) of Torts § 46-1 are appropriately considered. *Kazatsky v. King David Memorial Park*, 527 A.2d 988, 989 (Pa. 1987), *id.*  Section 46-1 provides the following: "One who by extreme and outrageous conduct intentionally or recklessly causes severe emotional distress to another is subject to liability for such emotional distress, and if bodily harm to the other results from it, for such bodily harm."  To impose liability for intentional infliction of emotional distress, a plaintiff must prove the following elements: "1) the conduct must be extreme and outrageous; 2) it must be intentional; 3) it must cause emotional distress; and 4) that distress must be severe."  *Hoy v. Angelone*, 691 A.2d 476, 483 (Pa. Super. 1997).

Regarding the injury elements of the claim, *Kazatsky* explained

14

that

> [g]iven the advanced state of medical
> science, it is unwise and unnecessary to
> permit recovery to be predicated on an
> inference based on the defendant's
> "outrageousness" without expert medical
> confirmation that the plaintiff actually
> suffered the claimed distress.  Moreover, the
> requirement of some objective proof of severe
> emotional distress will not present an
> unsurmountable obstacle to recovery.  Those
> truly damaged should have little difficulty
> in procuring reliable testimony as to the
> nature and extent of their injuries.  We
> therefore conclude that if section 46 of the
> Restatement is to be accepted in this
> Commonwealth, at the very least, existence of
> the alleged emotional distress must be
> supported by competent medical evidence.

*Kazatsky*, 527 A.2d at 995.  Pennsylvania's Superior Court stated

that "a plaintiff must suffer some type of resulting physical harm

due to the defendant's outrageous conduct."  *Swisher v. Pitz*, 868

A.2d 1228, 1230 (Pa. Super. Ct. 2005); *see also Reedy v. Evanson*,

615 F.3d 197, 231 (3d Cir. 2010)(citing *Swisher*, 868 A.2d at 1230)

(where the plaintiff did not point to any physical harm suffered as

a result of alleged conduct, her intentional infliction of

emotional distress claim failed as a matter of law).

   To Defendant's argument that Plaintiffs' IIED claims should be

dismissed because they have not alleged physical harm as a result

of emotional distress (Doc. 8 at 9-10), Plaintiffs assert they have

sufficiently alleged injury.  (Doc. 13 at 9.)  Specifically, they

state "they have suffered substantial injuries and damages,

including severe apprehension of serious bodily injury, emotional

15

distress and upset."  (Doc. 13 at 9.)

    We find the conclusory statements regarding injury stated in Plaintiffs' Complaint are insufficient to support their IIED claims.  While they do not need to produce competent medical evidence at this stage of the proceedings, they have alleged no specific physical harm as required under Pennsylvania law. *Swisher*, 868 A.2d at 1230.  Therefore, their IIED claims are properly dismissed.  They will be dismissed without prejudice as we cannot say that amendment would be futile.

## 5.  *Punitive Damages*

    Finally, Defendant contends that punitive damages are not available against municipal entities and defendants in their official capacities as a matter of law and Defendant's conduct as alleged by Plaintiffs is not sufficiently outrageous to permit such a claim against Defendant in his individual capacity. (Doc. 8 at 13.)   We agree Defendant may not be sued for punitive damages in his official capacity but his individual capacity suit may proceed.

    The Third Circuit Court of Appeals explained the standard for an award of punitive damages in a civil rights case in *Alexander v. Riga*, 208 F.3d 419 (3d Cir. 2000).

> The standard for punitive damages in a federal civil rights action was set by the Supreme Court, and does not require "outrageousness"; a jury may "assess punitive damages in [a civil rights action] when the defendant's conduct is shown to be motivated by evil motive or intent, or when it involves reckless or callous indifference to the

16

federally protected rights of others."
208 F.3d st 430-31 (quoting *Smith v. Wade*, 461 U.S. 30, 56 (1983)).
"[P]unitive damages in general represent a limited remedy, to be
reserved for special circumstances." *Savarese v. Agriss*, 883 F.2d
1194, 1204 (3d Cir. 1989) (citing *Cochetti v. Desmond*, 572 F.2d
102, 105-06 (3d Cir. 1978)).

Defendant states that to obtain punitive damages in a § 1983
action "'a plaintiff must establish facts of record to prove that
the individuals knowingly and maliciously deprived the plaintiff of
his civil rights.'" (Doc. 8 at 13 (quoting *Ruiz v. Philadelphia
Housing Authority*, 1998 U.S. Dist. LEXIS 3925 (E.D. Pa. March 17,
1998))[1].) Defendant then concludes that "[b]ecause Defendant's
conduct as alleged in Plaintiffs' Complaint does not meet their
fundamental pleading burden, it is not sufficiently 'outrageous' to
permit claims for punitive damages against Officer Jenkins." (Doc.
8 at 13.)

Plaintiffs maintain they are suing Defendant for punitive
damages in his individual capacity. (Doc. 13 at 11.) Plaintiffs
further aver that the facts of the Complaint and the arguments
presented in their opposition brief, when viewed in the light most
favorable to them, lead to the "inescapable conclusion that the
constitutional rights of the Plaintiffs were intentionally violated

---

[1] Alternate citation for this case is *Ruiz v. Philadelphia
Housing Authority*, No. Civ. A. 96-7853, 1998 WL 159038 (E.D. Pa.
Mar. 17, 1998) (not precedential).

17

by the Defendant, with his intent certainly evil and involving a callous indifference to the Plaintiff's federally protected rights."  (Doc. 13 at 11.)

While we do not agree with Plaintiffs regarding the strength of their punitive damages claim, we conclude that Defendant has again failed to satisfy his burden of showing that Plaintiffs' punitive damages claims cannot proceed.[2]  First, Defendant's statement of the law is not consistent with that set out in *Alexander* and *Smith*: these precedential cases do not require a knowing and malicious deprivation of rights.  *See Smith*, 461 U.S. at 56; *Alexander*, 208 F.3d at 430-31 (specifically stating "the defendant's action need not meet [the] higher standard" of conduct that is "intentional or motivated by evil motive").  Further, the "outrageous" conduct cited by Defendant as a punitive damage claim requirement was specifically rejected in the cited cases. *Id.* Finally, a plaintiff must only present enough evidence to show that his claim is plausible when a defendant challenges a claim in a motion to dismiss.  *Iqbal*, 129 S. Ct. 1950.   Based on Defendant's misstatement of the law and burden, his motion to dismiss Plaintiff's punitive damages claim is properly denied.

### III. Conclusion

For the reasons discussed above, the Motion to Dismiss of

---

[2]  Defendant discusses punitive damages only in the context of a § 1983 action although Plaintiffs seek punitive damages on their state law claims as well (*see* Doc. 1 at 10-13).

Defendant, Police Officer Thomas Jenkins (Doc. 7) is granted in part and denied in part.  The motion is granted insofar as Plaintiffs' equal protection claims and intentional infliction of emotional distress claims are dismissed.  These claims are dismissed without prejudice.  Defendant's motion is denied in all other respects.  Therefore, Plaintiff's claims regarding excessive force and unreasonable seizure in Counts I and II go forward, their claims for Assault and Battery in Counts III and IV go forward, and their claims for punitive damages go forward.  An appropriate Order is filed simultaneously with this Memorandum.

                              S/Richard P. Conaboy
                              RICHARD P. CONABOY
                              United States District Judge

DATED: July 21, 2012